**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eduardo BALLESTEROS–CASTRO, a/k/a Eduardo Peralta–Castro, a/k/a Antonio Peralta–Castro, a/k/a Antonio Castro–Peralta, a/k/a Edward Castro–Peralta, a/k/a Tony Pralta–Castro, Defendant–Appellant.**

**No. 99–10325.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 2000.[1]

Decided Jan. 11, 2001.

Before WOOD, Jr.,[2] KLEINFELD, and GRABER, Circuit Judges.

**ORDER**

This case is submitted for decision as of December 12, 2000.

**MEMORANDUM[3]**

Defendant-appellant Eduardo Ballesteros–Castro ("Ballesteros"), a citizen of

---

1. The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed. R.App. P. 34(a)(2)

2. The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

3. This disposition is not appropriate for publication and may not be cited to or by the

Mexico, was convicted following a jury trial of illegal reentry after deportation in violation of 8 U.S.C. § 1326(a). Ballesteros argues that the district court erred, first, in failing to instruct the jury that it was necessary to find that his reentry into the United States was voluntary and, second, in denying his motion for judgment of acquittal based on insufficiency of the evidence.

The only element contested by the defendant is the government's evidence concerning the voluntariness of his reentry. Even at the time briefs were filed, there was no clear statement by this court as to the necessity of proving voluntariness as an element of the offense under § 1326. However, with the issuance of *United States v. Quintana–Torres*, 235 F.3d 1197 (9th Cir.2000), it is now clear that "the voluntariness of the return is an element of the crime and, as such, must be proved beyond a reasonable doubt by the prosecution." *Id.* at 1200. Therefore, Ballesteros' conviction must be reversed unless the district court's failure to instruct the jury as to the element of voluntariness is harmless error; that is, unless it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Neder*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). *See also United States v. Gracidas–Ulibarry*, 231 F.3d 1188, 1197 (9th Cir.2000) (en banc) ("[T]he omission of an element of a crime from a jury instruction [i]s harmless error when the omitted element was uncontested and supported by overwhelming evidence." (citing *Neder*, 527 U.S. at 17)).

The trial evidence offered by the government was not as thorough and complete as it might have been, but we find the government's evidence, though brief and circumstantial, to be sufficient to support the conviction even under the high standard which applies. Ballesteros was taken into custody by the Border Patrol on November 1, 1998, in Yuma, Arizona, at the intersection of 16th Street and Interstate 8, adjacent to a railroad yard. When the Border Patrol agent arrived, Ballesteros was seated in the back of a Union Pacific Railroad Police car. The agent took custody of Ballesteros and transported him to a Border Patrol checkpoint. There the agent advised Ballesteros in Spanish of his *Miranda* rights. Ballesteros agreed to waive those rights and answer the agent's questions. Ballesteros admitted that he was a Mexican citizen who had previously been deported from the United States and that he had entered the United States on October 30, 1998, near San Luis, Arizona, without the necessary documents or permission to reenter. Ballesteros does not challenge the voluntariness of these statements or the accuracy of the agent's testimony. From Ballesteros' point of entry at San Luis to Yuma, where he was taken into custody by the Border Patrol, is about 20 to 30 miles.

Ballesteros offered no evidence at trial whatsoever, the burden of proof being the government's. In this court he offers no more than his counsel's various arguments that there was no proof as to the voluntariness of the reentry. It is hypothesized by defense counsel that Ballesteros may have been "found lying on the ground somewhere between San Luis and Yuma in a drunken or drug-induced stupor or that he was unconscious from a physical blow and that he'd been carried into this country in that state." Not mentioned are the possibilities noted in *Quintana–Torres*, 235 F.3d at 1199–1200, that the defendant was extradited here against his will; that he was sleeping on a train which to his sur-

courts of this circuit except as provided by Ninth Cir. R. 36–3.

prise entered this country; or even that he might have been on a flight which had engine trouble and made an emergency landing at a U.S. airport. The government, in its brief, labeled Ballesteros's proffered speculations as "bizarre." We do not adopt that label, but we do agree that those suggested possibilities are most unlikely. *See id.*

The government asserts that a far more reasonable inference from the evidence would be that Ballesteros "voluntarily entered the United States, hopped a train heading north and was taken into custody by the Union Pacific Railroad Police for trespassing at the railroad yard in Yuma." There was no evidence presented at trial as to where Ballesteros was apprehended by the railroad police or the circumstances surrounding his apprehension. However, we do not believe that its absence necessitates reversal under the facts of this particular case. That Ballesteros was in the custody of the railroad police at the time he was turned over to the Border Patrol does not suggest he was brought into this country against his will. As noted in *Quintana–Torres*, 235 F.3d at 1199–1200, "all these possibilities show that it is not a 100% certainty that an alien discovered a distance from the border arrived of his own volition." The court continues, "[o]n the other hand, the likelihood of any of these possibilities happening is such that a reasonable juror may well infer that the alien had the intention to be here when the alien is discovered at any location in the country other than the border." *Id.*

In the present case, given the district court's failure to instruct the jury as to the necessity of finding voluntariness as an element of the offense, we must apply a higher standard than the one used in *Quintana–Torres.* The agent testified that, when asked how he had gotten back into the United States, Ballesteros told the agent only that "[h]e entered near San Luis, Arizona." There is nothing in the record to suggest that Ballesteros' entry was involuntary or that Ballesteros had any difficulty communicating with the Border Patrol agent. In fact, Ballesteros had already had prior experience with this country's legal system. On the facts of this case, the government's evidence as to the voluntariness of Ballesteros' reentry is both uncontested and persuasive, and it is clear beyond a reasonable doubt that the jury's verdict would have been the same even with an instruction on voluntariness of the reentry. The government's evidence, although circumstantial, is more than enough when weighed only against defense counsel's imaginative speculations without a suggestion of evidentiary support in the record.

Given the persuasive and uncontested evidence that Ballesteros' reentry was voluntary, the district court correctly denied Ballesteros' motion for judgment of acquittal. *See United States v. Hinton,* 222 F.3d 664, 669 (9th Cir.2000) (holding that evidence is sufficient to support a conviction "if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements ... beyond a reasonable doubt.").

AFFIRMED.