**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Adan SALAZAR–ROBLES,**
**Defendant–Appellant.**

**No. 99–10194.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2000.

Decided March 21, 2000.

John P. Balazs, Assistant Federal Public Defender, Sacramento, California, for the defendant-appellant.

Robin R. Taylor, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Before: SCHROEDER, NOONAN, and TASHIMA, Circuit Judges.

NOONAN, Circuit Judge:

Adan Salazar–Robles appeals his conviction of being a deported alien found in the United States without the consent of the Attorney General in violation of 8 U.S.C. § 1326. His appeal presents a single issue: does venue for the prosecution of this offense lie where the alien is involuntarily found? Holding that Salazar–Robles was properly prosecuted in the Eastern District of California where an agent of the Immigration and Naturalization Service (the INS) found him in state prison, we affirm the judgment of conviction.

## FACTS AND PROCEEDINGS

Salazar–Robles was deported from the United States on December 8, 1993; on September 6, 1995; on April 23, 1996; on June 21, 1997; and on December 12, 1997. On February 5, 1998, he was arrested by state authorities in Orange County, California for state parole violations. He was convicted and incarcerated and transported by state authorities from Orange County in the Central District of California to Folsom State Prison in the Eastern District.

On May 7, 1998, he was encountered by an INS agent at Folsom and interviewed. He admitted that he was a citizen of Mexico illegally in the United States. On September 11, 1998, he was indicted for two counts of illegal entry in violation of 8 U.S.C. § 1325(a)(1) and for being a deported alien found in the United States in the Eastern District of California in violation of § 1326.

Before trial, Salazar–Robles submitted a proposed jury instruction that to find him guilty of the § 1326 violation the jury must find that his presence in the Eastern District was "voluntary." The court rejected the instruction. The case proceeded to trial. At the close of the government's case, Salazar–Robles moved for acquittal. The motion was denied. The jury found him guilty on all counts. He again moved for acquittal on the ground of insufficient evidence and on the ground of improper venue. The motion was denied, and he was sentenced to 17 months imprisonment, 3 years supervised release, and a special assessment of $100.

Salazar–Robles appeals his conviction of violation of § 1326.

## ANALYSIS

■ Salazar–Robles's appeal may be read in two ways: either as a contention that venue was improper because he did not voluntarily commit the crime in the Eastern District, or that the government did not prove an element of the crime because "being found," had to be the result of a voluntary act. Either way, Salazar–Robles loses. Venue was proper. A violation of § 1326 has only two elements and

both elements of the crime—illegal return and being found—were established.

The argument is earnestly advanced that to be guilty of a crime you must perform a voluntary act and that, when the crime consists in part in being found somewhere, you must have voluntarily put yourself in the forbidden place. As Salazar–Robles did not voluntarily put himself in Folsom State Prison, he did not voluntarily commit the act which completes the crime of being a deported alien found in the United States. Q.E.D.

The argument is neat and not without attractiveness; but it won't wash. Salazar–Robles did voluntarily return to the United States, for at least the fifth time after five deportations. The offense was completed by his being discovered; but his discovery did not have to be voluntary. "Being found" is an element of the offense; but it is a passive state, not requiring proof of a voluntary act. The voluntary element consisted in Salazar–Robles's return. Two other circuits have already found venue proper in a district in which an alien is found after being brought there involuntarily as a result of incarceration. *See United States v. Herrera–Ordones*, 190 F.3d 504, 511 (7th Cir.1999); *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir.), *cert. denied*, 522 U.S. 902, 118 S.Ct. 254, 139 L.Ed.2d 182 (1997). In *United States v. Ortiz–Villegas*, 49 F.3d 1435, 1437 (9th Cir.), *cert. denied*, 516 U.S. 845, 116 S.Ct. 134, 133 L.Ed.2d 82 (1995), this court reaffirmed its "long-standing rule that violation of § 1326 requires only a general intent to reenter the United States." We reasoned that "[i]ntent to be in the United States at the moment he or she is located is not necessary." *Id.*

Two other cases relate to this conclusion. In *United States v. Guzman–Bruno*, 27 F.3d 420, 422–23 (9th Cir.1994), we held that for Sentencing Guideline pur-

poses the date a § 1326 offense is deemed to be committed is the date of the alien's discovery by the INS. In *United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999), we held that for an alien, first discovered by the INS in Oregon, venue for prosecution lay in Oregon; subsequent prosecution in Washington was improper for lack of venue. The present case rounds out the series: an alien is to be prosecuted in the district the offense is completed by his discovery, be he there willy-nilly.

AFFIRMED.