UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Fernando QUINTANA–TORRES,
Defendant–Appellant.

No. 99–50690.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 2000

Filed Sept. 15, 2000

Amended Dec. 28, 2000

Steven F. Hubachek, Assistant Federal Public Defender, San Diego, California, for the defendant-appellant.

Roger W. Haines, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: NOONAN, TROTT and BERZON, Circuit Judges.

## ORDER AND AMENDED OPINION

NOONAN, Circuit Judge:

### ORDER

The opinion filed on September 15, 2000 [224 F.3d 1157] is amended as follows:

Slip op. p. 1159, l.9, add: "Alternatively, voluntarily remaining in the country after an involuntary entry satisfies the statute."

Slip op. p. 1159, l.7, add: "*Apprendi argument.* Quintana's argument that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), overruled *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), fails. *See United States v. Pacheco–Zepeda,* 234 F.3d 411 (9th Cir.2000)."

With these amendments, the panel votes to deny the petitions for rehearing. Judges Trott and Berzon have voted to reject the suggestion for rehearing en banc and Judge Noonan recommended rejection of the suggestion for rehearing en banc.

The full court has been advised of the suggestion for en banc rehearing, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35(b).

The petitions for rehearing are DE-NIED, and the suggestion for rehearing en banc is REJECTED.

## OPINION

■ Jose Fernando Quintana–Torres appeals his conviction of being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). Quintana contends that the government did not produce evidence that he had entered the United States voluntarily. We hold that the evidence of his being in the United States a distance from the border was sufficient in this case to justify any reasonable juror inferring that he had voluntarily entered the United States. We affirm the judgment of the district court.

## FACTS

Quintana was born in Tijuana, Baja California, Mexico. On June 24, 1994 he was deported from the United States. On August 28, 1996, he was encountered by an agent of the Immigration and Naturalization Service in San Diego, California.

## PROCEEDINGS

On January 27, 1999, Quintana was indicted for violation of 8 U.S.C. § 1326(a) and (b)(2). On May 4, 1999, he was tried by a jury. He introduced no evidence in his defense. At the conclusion of the government's case, he moved for acquittal under Fed.R.Crim.P. 29. In explanation of this motion, counsel objected to a date on Quintana's birth certificate that was different from the date on the government's certificate that he had not applied for permission to reenter. The court denied the motion. The jury returned a verdict of guilty.

At the sentencing hearing on October 1, 1999, Quintana was shown to have committed an aggravated felony, increasing his sentence. Counsel argued that he should be given credit for acceptance of responsibility because, after he was discovered in the country, he was interviewed by an INS inspector and swore that he was an alien, who had been deported and not received permission to reenter. Counsel stated: "Basically he fessed up to everything—to all the elements of 1326." (This sworn statement was taken in Donovan State Prison, a fact that had been excluded from consideration by the jury). The court granted him a departure downward for his acceptance of responsibility. Counsel pointed out that Quintana was not prosecuted federally until his state sentence had been served, so that he had lost the chance of serving part of a federal sentence concurrently with a state sentence. Counsel asked for a sentence of 5 years, 3 months. The government took a neutral position on this request. After granting him 3 points for acceptance of responsibility, the court noted that the sentencing range was 63 to 78 months. The court departed downward 2 levels and sentenced him to imprisonment of five years and ten months and three years of supervised release.

Quintana appeals.

## ANALYSIS

■ *Quintana's Voluntary Reentry.* On appeal, Quintana argues as a ground for reversal the lack of evidence that he voluntarily reentered the United States after his deportation in 1994. This ground was not advanced when he made his motion for acquittal on one specified ground. The objection now advanced was waived. *See United States v. Reyes–Alvarado,* 963 F.2d 1184, 1187 (9th Cir.1992). An exception to the rule exists where review is necessary to prevent a manifest miscarriage of justice. *Id.* However, Quintana has not shown that such a miscarriage has occurred here.

■ The government argues that it did not have to prove that Quintana intentionally reentered this country. That cannot be right. There is no crime without an intentional act of some kind. No crime without volition is the foundational axiom of our criminal law. We have already held

**1200**

in a case construing § 1326 that "being found" within the meaning of the statute "is a passive state, not requiring proof of a voluntary act." *United States v. Salazar–Robles*, 207 F.3d 648, 650 (9th Cir.2000). We added that "the voluntary element" of the crime consists in the return that is prohibited by the statute. *Id.* Therefore, the voluntariness of the return is an element of the crime and, as such, must be proved beyond a reasonable doubt by the prosecution. Alternatively, voluntarily remaining in the country after an involuntary entry satisfies the statute.

Quintana relies on cases where an alien was apprehended at the border to show that voluntariness of entry will not exist if an alien is "in the clutches" of the government from the very moment he sets foot on American soil. *E.g. United States v. Pacheco–Medina*, 212 F.3d 1162, 1165 (9th Cir.2000). Other cases may be hypothesized where an alien involuntarily enters the United States—he is extradited here against his will; he is paroled in by the proper authorities; he is sleeping on a train which against his expectation enters this country; he is on a plane flying over United States territory which has engine trouble and makes an emergency landing at an airport here. All these possibilities show that it is not a 100% certainty that an alien discovered a distance from the border arrived of his own volition.

■ On the other hand, the likelihood of any of these possibilities happening is such that a reasonable juror may well infer that the alien had the intention to be here when the alien is discovered at any location in the country other than the border. Such a conclusion is not a presumption of law. It is circumstantial proof that is convincing unless explained away, much as a face covered by jam near a jam jar is convincing proof of jam-eating unless otherwise explained. There is an inference that a reasonable mind could accept as true beyond a reasonable doubt. To dispel the inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place. Quintana made no such showing. His admission of "all the elements" of a § 1326 violation, introduced by him at sentencing, means that, even if contrary to the conclusion we have reached we accepted his contention, there would be no unfairness in not recognizing any error. *See United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ *Apprendi argument.* Quintana's argument that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), overruled *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), fails. *See United States v. Pacheco–Zepeda*, 234 F.3d 411 (9th Cir.2000).

■ *Quintana's Alienage.* Quintana renews his attack on the birth certificate, but it was up to the jury to decide whether the different date on it was of significance. The government also introduced as evidence of his alienage other documents showing his 1994 deportation. No objection was made to their introduction. They constituted admissible evidence. *See United States v. Loyola–Dominguez*, 125 F.3d 1315, 1317–18 (9th Cir.1997). From the documents a rational juror could infer that Quintana was an alien who had had no defense to his earlier deportation.

AFFIRMED.