UNITED STATES of America, Plaintiff–Appellee,

v.

Gerardo PARGA–ROSAS, Defendant–Appellant.

No. 99–50775.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 2000.

Filed Feb. 1, 2001.

---

Tony L. Cheng, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Anne Kristina Perry, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: RYMER, T.G. NELSON and WARDLAW, Circuit Judges.

RYMER, Circuit Judge:

Gerardo Parga–Rosas appeals from his conviction and sentence for being a deported alien "found in" the United States in violation of 8 U.S.C. § 1326, contending among other things that an indictment charging this offense is fatally defective unless it alleges that the defendant voluntarily entered the United States following his deportation. We conclude that an indictment which charges all statutory elements of the offense (as this one does)— that the defendant is an alien; had been deported; was subsequently found in the United States; and did not have the Attorney General's permission to reapply for admission—is sufficient.[1] Beyond this, evidence that a deported alien was found in the United States anywhere other than at the border suffices, in the absence of any showing by the defendant that the entry was in fact involuntary, for conviction on a "found in" offense. Here, after being deported, Parga–Rosas was found well inside the border, unquestionably free of official restraint, and never claimed that voluntary re-entry had not actually occurred. Accordingly, there is no basis for reversing Parga–Rosas's conviction on the ground that the government failed to allege or prove a voluntary entry.

As Parga–Rosas's remaining arguments do not require reversal, we affirm.

**I**

Parga–Rosas was deported to Mexico from the United States on October 14, 1998. On February 24, 1999, San Diego Deputy Marshal Eddie Head was in the process of executing a warrant on Tiffany Richards at an apartment complex in Chula Vista, California. Parga–Rosas was there. When asked for identification, Parga–Rosas produced a photocopy of an I–551 "green card" issued in his name. Head contacted Border Patrol Agent Joe Filippi about the photocopy and Filippi asked that Parga–Rosas be detained. Filippi requested the "A" registration file for the number on Parga–Rosas's I–551 card, which showed that the card belonged to an individual who was born in Mexico and had previously been deported. Without advising Parga–Rosas of his *Miranda* rights, Filippi questioned him about his alienage and immigration history and Parga–Rosas admitted that he was a citizen of Mexico and was illegally in the United States.

Parga–Rosas was then taken to the Border Patrol station where he was read his *Miranda* rights, fingerprinted, and run through the AFIS and IDENT computer systems (which maintains information on every INS apprehension). These checks revealed that Parga–Rosas had previously been deported and had a prior criminal history. He admitted both.

On March 24, 1999, the grand jury returned a one-count indictment charging Parga–Rosas with being a deported alien in the United States in violation of 8 U.S.C. § 1326.[2] He moved to dismiss the

---

1. Section 1326(a) provides that "any alien who—
 (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for

admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
 shall be fined under Title 18, or imprisoned not more than 2 years, or both."

2. The indictment charges:
 On or about February 24, 1999, within the Southern District of California, defendant GERARDO PARGA-ROSAS, an alien, who previously had been excluded, deported and

indictment and to suppress evidence as the fruit of an illegal arrest. The district court denied the motion to dismiss but suppressed all evidence except for Parga–Rosas's identity, prior convictions and deportation.

On July 22, 1999 a fingerprint exemplar was taken from Parga–Rosas which an examiner for the San Diego Police Department compared with the Warrant of Deportation in Parga–Rosas's "A" file. He determined that the fingerprints matched. Parga–Rosas sought to suppress these exemplars as well, but the court declined to do so on the ground that the fingerprints were inextricably intertwined with Parga–Rosas's identity.

The jury convicted Parga–Rosas and he was sentenced to 57 months imprisonment and three years supervised release. He timely appealed.

## II

■ We start with Parga–Rosas's constitutional challenge to § 1326. He argues that § 1326 is an unconstitutional status offense as it can only be violated by deported aliens, thus punishing those individuals based upon their status. This argument is foreclosed by *United States v. Ayala*, 35 F.3d 423 (9th Cir.1994), *cert. denied,* 514 U.S. 1019, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995). There we held that "[a] conviction under § 1326 for being 'found in' the United States necessarily requires that a defendant commit an act: he must re-enter the United States without permission within five years after being deported." *Id.* at 426.

Parga–Rosas submits that we should disregard *Ayala* on two grounds. First, he suggests that *Ayala* cannot control because it has been undermined by *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). He reasons that *Ayala* was premised on the notion that the constitutional

removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States having expressly consented to the defendant's

problems created by a status offense are not implicated when applied to conduct "which society has an interest in preventing," *Ayala,* 35 F.3d at 426 (quoting *Powell v. Texas,* 392 U.S. 514, 533, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968)); *Almendarez–Torres* broadened the nature of the offense by holding that § 1326(b)(2), which sets forth sentencing enhancements for aggravated felons who re-enter illegally, is not a separate offense from § 1326(a); and while society may have an interest in preventing aggravated felons from re-entering the country illegally, the mere act of re-entry by a deported alien is relatively harmless and so society lacks an interest in preventing deported aliens from being "found in" the United States. Thus, as we understand his argument, this leaves alienage itself, which is an involuntary status that is unconstitutional to criminalize. However, this misses the point of *Ayala* (and *Powell*); their "entire thrust" is that criminal penalties can be inflicted only if the accused "has committed some actus reus." *Ayala,* 35 F.3d at 426 (quoting *Powell,* 392 U.S. at 533, 88 S.Ct. 2145). Here, Parga–Rosas is not being punished because he has the status of being a deported alien; he is being punished for having committed the act of re-entering the United States without permission and staying here. Accordingly, *Ayala* has not been overruled by *Almendarez–Torres* and remains good law.

■ Second, Parga–Rosas argues that the government should be bound by its previous description of § 1326 as a status offense in *United States v. Encarnacion,* 56 F.Supp.2d 151 (D.P.R.1999). This argument fails as well, because whether or not the government is bound by whatever it argued in that case, we are bound by *Ayala.*

reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

## III

■ Parga–Rosas next contends that the indictment failed to state an offense because it did not allege that he voluntarily re-entered the United States after deportation. In his view, the crime of being a deported alien found in the United States requires that the individual voluntarily re-enter the United States after deportation, because we have stated that "[a]n 'entry' into the United States is required before a person is 'found in' the United States." *United States v. Ruelas–Arreguin,* 219 F.3d 1056, 1061 (9th Cir.), *cert. denied* — U.S. ——, 121 S.Ct. 594, 148 L.Ed.2d 508 (2000) (citing *United States v. Pacheco–Medina,* 212 F.3d 1162, 1166 (9th Cir.2000)). In the same vein, he maintains that his conviction should be reversed because the government failed to prove that he voluntarily entered the United States following his deportation.

Section 1326 sets forth three separate offenses for a deported alien: to "enter," to "attempt to enter," and to be "found in" the United States without permission. The "found in" offense is distinct from the other two prohibited acts. *Pacheco–Medina,* 212 F.3d at 1165 (citing *United States v. Hernandez,* 189 F.3d 785, 789 (9th Cir. 1999); *United States v. Santana–Castellano,* 74 F.3d 593, 597 (5th Cir.1996); *United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir. 1994)). Although re-entry is part of being found in the United States and is "embedded in the 'found in' offense," *Pacheco–Medina,* 212 F.3d at 1166, we have never suggested that the crime of "entry" must be charged in order to charge the crime of being "found in." Nor did we mean to prescribe a new rule for pleading when we said in *Pacheco–Medina* that "an entry, as defined legally, is required before a person is 'found in' the United States." 212 F.3d at 1166. Rather, we were simply making clear that a person who has not legally entered the country by being free of official restraint at the border logically "cannot have been found in a place he did not succeed in entering." *Id.* We see no reason to invalidate Parga–Rosas's indictment because it did not go further than charging the statutory elements for being "found in" the United States. Alleging that the defendant is a deported alien subsequently found in the United States without permission suffices. *See United States v. Jackson,* 72 F.3d 1370, 1380 (9th Cir.1995); *United States v. Musacchio,* 968 F.2d 782, 787 (9th Cir.1991) (indictment that tracks the statute itself is generally sufficient).

■ Even though it need not be pled, "entry" may nevertheless become an important element of proof that an alien has been "found in" the United States in some cases, primarily those involving an apprehension at the border. In such cases, the alien may physically be present in the United States yet be deemed not to have "entered" if he is still under official restraint at the time he is found. This stems from the legal fiction that entry is not accomplished until a person is free from official restraint. Thus, "[a]n alien's mere physical presence on United States soil ... is insufficient to convict him of being found in the United States in violation of 8 U.S.C. § 1326. Rather, the government must also establish that the alien entered the United States free from official restraint at the time officials discovered or apprehended him." *United States v. Ruiz–Lopez,* 234 F.3d 445, 448 (9th Cir. 2000) (citations omitted). *Pacheco–Medina* perfectly illustrates the principle. Video surveillance detected Pacheco climbing a fence at the border. An agent responded immediately, Pacheco started to run, and he was captured within a few yards. He was prosecuted for a "found in" offense. But, as we explained, for him "[t]he bad news was that, because he was never free from official restraint, he did not get in. The good news was that, because he was never free from official restraint, he did not commit the crime of being found in the United States." 212 F.3d at 1166. For this reason, the evidence was insufficient to convict. *See also Ruiz–Lopez,* 234 F.3d at 449 (reversing for insufficiency of the evidence to prove that alien was free

from official restraint during border encounter).

Parga–Rosas argues that voluntariness of re-entry has been recognized as essential in non-border cases as well, pointing to *United States v. Quintana–Torres*, 235 F.3d 1197 (9th Cir.2000), where we stated that "voluntariness of the return is an element of the crime and, as such, must be proved beyond a reasonable doubt by the prosecution," *id.* at 1200 *United States v. Salazar–Robles*, 207 F.3d 648, 650 (9th Cir.2000); and *Ruelas–Arreguin*, 219 F.3d at 1061. However, *Quintana–Torres* involved sufficiency of the evidence and *Ruelas–Arreguin* and *Salazar–Robles* were both venue cases. In *Ruelas–Arreguin*, we were concerned with whether venue could properly lie only in the district where the defendant was "found" or whether it could also lie where he entered the United States. In this context, we observed that the crime of being "found in" the United States is a continuing offense, starting with the illegal entry and being completed with discovery. 219 F.3d at 1061. In *Salazar–Robles*, the defendant was found in a state prison and contended that he could not be convicted for the crime of being "found in" a place that he did not voluntarily put himself in. We rejected the argument, explaining that " '[b]eing found' is an element of the offense; but it is a passive state, not requiring proof of a voluntary act. The voluntary element consisted in Salazar–Robles's return." 207 F.3d at 650. This, we noted, he did voluntarily, for at least the fifth time after five deportations. Neither *Ruelas–Arreguin* nor *Salazar–Robles* suggests that anything other than being "found in" the United States, which is what makes the crime complete, must specifically be alleged in the indictment.

In *Quintana–Torres*, Quintana argued on appeal that his "found in" conviction should be reversed for lack of evidence that he voluntarily reentered the United States. Like Parga–Rosas, Quintana relied on border cases such as *Pacheco–Medina*. We surmised that other instances might be hypothesized where an alien involuntarily enters the United States, but recognized that "the likelihood of any of these possibilities happening is such that a reasonable juror may well infer that the alien had the intention to be here when the alien is discovered at any location in the country other than the border." 235 F.3d at 1200. "To dispel the inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place." *Id.* Rather than impelling us to tack an "entry" charge onto a "found in" charge, *Quintana–Torres* indicates that sufficient evidence supported Parga–Rosas's conviction. Parga–Rosas was found in Chula Vista, well within the United States border, and never claimed that he was under official restraint or somehow came to be in Chula Vista involuntarily.

 In sum, the indictment did not fail to state an offense, nor must Parga–Rosas's conviction for being "found in" the United States in violation of § 1326 be reversed, either because the indictment failed specifically to allege a voluntary re-entry or because the government failed to prove it beyond a reasonable doubt.

## IV

We can summarily address Parga–Rosas's remaining contentions.

 First, he maintains that his motion for judgment of acquittal should have been granted because the government failed to prove his alienage beyond a reasonable doubt. We disagree. Proof of an Alien Registration File in his name, his application for an immigrant visa, his notice to appear at a deportation hearing and order of deportation, his warrant of deportation, a certificate of nonexistence of application for legal re-entry, together with testimony by an immigration officer that Parga–Rosas stated at his deportation hearing that he was a native and citizen of Mexico, suffices. *United States v. Ramirez–Cortez*, 213 F.3d 1149, 1158 (9th Cir.2000).

Second, Parga–Rosas argues that the district court should have suppressed the June 22, 1999 fingerprint exemplars as the fruit of his unconstitutional arrest four months earlier. Because the fingerprints were not taken for investigatory purposes but for the sole purpose of proving Parga–Rosas's identity, the Fourth Amendment is not implicated. *United States v. Guzman–Bruno,* 27 F.3d 420, 421 (9th Cir.1994) (identity of the defendant admissible even if statements were not).

Lastly, Parga–Rosas contends that because he was sentenced under 8 U.S.C. § 1326(b)(2), which increased his statutory maximum to 20 years, his sentence violates the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, we held otherwise in *United States v. Pacheco–Zepeda,* 234 F.3d 411 (9th Cir.2000).

AFFIRMED.