**UNITED STATES of America,**
**Plaintiff,**

v.

**Jose ORTIZ–HERNANDEZ, Defendant.**

No. 02–550–RE, 00–071–RE.

United States District Court,
D. Oregon.

Aug. 19, 2003.

Michael Mosman, United States Attorney, District of Oregon, Kent Robinson, Assistant United States Attorney, Portland, for United States.

Paul Papak, Assistant Federal Public Defender, Portland, for defendant.

## OPINION AND ORDER

REDDEN, District Judge.

The matter before the court is the government's motion for an order requiring defendant to provide a fingerprint exemplar. Oral argument on the motion was held July 25, 2003.

This court's resolution of the government's motion for a fingerprint exemplar is dependent on its earlier ruling that defendant's arrest was race-based. On July 7, 2003, this court granted defendant's motion to suppress the fingerprints and subsequent identification that formed the basis of his indictment for illegal reentry. Amended Opinion and Order, July 7, 2003. The court concluded that, based upon the facts and testimony discussed in the amended opinion and order, the police officers stopped, searched, and arrested defendant because of his race. The opinion discusses the police officers' proffered justifications for stopping, searching and arresting defendant, and concluded they were completely unfounded and baseless. For example, the officers testified they relied on the following observations for their probable cause determination: defendant and another Hispanic man walked to a grocery store parking lot in the middle of the afternoon; one of the two men used a public telephone and stood near it; the two men walked over to a vehicle, chatted with the occupants, and then got in; the vehicle drove away. The court concluded that nothing in these observations could justify the belief by a prudent person that defendant had committed or was about to commit a crime. Further, one of the officers testified that he saw two Hispanic men getting into a vehicle and followed that vehicle. He testified that, without any rational basis, he thought one of the individuals was defendant and also thought that drugs were being transported. The officer admitted he was in error because when he stopped the vehicle and conducted a search, neither individual in the vehicle was defendant and the search revealed nothing illegal. In addition, the driver of the other vehicle observed by police during this incident was a non-Hispanic woman, and her passenger was a non-Hispanic. Officers stopped the vehicle because the driver failed to signal a left-hand turn. She was driving with a suspended license, told the officers that she was on methadone but also using heroin on occasion, and also told them that she and her passenger owned the drug paraphernalia found in the vehicle. Even so, the police had no interest in the non-Hispanic driver or passenger, rather focusing on the defendant.

The government now requests a fingerprint exemplar, which it intends to compare with the fingerprints in defendant's immigration file to establish his identity at trial on the illegal reentry charge. The government relies primarily on *United States v. Parga–Rosas*, 238 F.3d 1209 (9th Cir.2001); *United States v. Lumitap*, 111 F.3d 81 (9th Cir.1997); and *United States v. Humphries*, 636 F.2d 1172 (9th Cir. 1980), for its argument that the exclusionary rule does not operate in a criminal proceeding to exclude identity evidence.

*United States v. Lumitap* is not on point. There the Ninth Circuit held that a defendant cannot challenge his presence at trial, and a subsequent in-court identification, simply because his appearance in court was precipitated by an unlawful arrest. 111 F.3d at 84. The issue here is not defendant's presence at trial or in-court identification, but rather whether the government may obtain from defendant a

fingerprint exemplar when earlier fingerprint evidence was suppressed because the arrest was race-based.

*United States v. Humphries* is also not on point. The illegal arrest in that case was not race-based. 636 F.2d at 1177–82.

Further, *Parga–Rosas* is not controlling authority in this case because the illegal arrest in that case was also not race-based. There, defendant was charged with an immigration crime. The district court concluded that defendant's arrest was illegal (but not race-based) and granted defendant's motion to suppress evidence "as the fruit of an illegal arrest." 238 F.3d at 1212. Four months after defendant's arrest, the government obtained a new fingerprint exemplar. Defendant then moved to suppress the fingerprint exemplar as the fruit of the illegal arrest. The Ninth Circuit affirmed the district court's refusal to apply the exclusionary rule to suppress the fingerprint exemplar "because the fingerprints were not taken for investigatory purposes but for the sole purpose of proving Parga–Rosas' identity." *Id.* at 1215. The Ninth Circuit relied on *United States v. Guzman–Bruno*, 27 F.3d 420, 421 (9th Cir.1994) (illegal arrest did not require suppression of identity evidence in criminal proceeding).

■ In this case, the government argues that, as in *Parga–Rosas*, the exclusionary rule does not operate to foreclose the government's acquisition and introduction of identity evidence (the fingerprint exemplar) even where the court suppressed the fingerprints taken at the arrest. This court disagrees—application of the exclusionary rule depends on whether the seizure was race-based. Because the *Parga–Rosas* seizure was not race-based,

it does not dictate the result of this case where the seizure was race-based.

In the Ninth Circuit, the exclusionary rule operates in a civil deportation context to exclude identity evidence when the seizure was race-based. *Gonzalez–Rivera v. INS*, 22 F.3d 1441 (9th Cir.1994) (detention based solely on Hispanic appearance is an egregious Fourth Amendment violation warranting application of exclusionary rule in civil deportation proceeding); *Orhorhaghe v. INS*, 38 F.3d 488 (9th Cir. 1994) (seizure based on individual's "Nigerian-sounding name" is an egregious violation of the Fourth Amendment warranting application of the exclusionary rule in civil deportation proceeding).

Prior to *Gonzalez–Rivera* or *Orhorhaghe*, the Supreme Court concluded in *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1046, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), that the exclusionary rule generally does not apply in civil deportation proceedings, *except* in cases involving "egregious violations of the Fourth Amendment." A majority of the Court concluded that "because the deterrent effect of applying the exclusionary rule in civil cases is minimal and its cost is significant, as a general rule, evidence obtained in an unlawful manner will not be excluded from civil proceedings."[1] The Court excepted from its conclusion situations involving "egregious violations of the Fourth Amendment". *Id.* at 1050–51, 104 S.Ct. 3479. Further, in *Adamson v. C.I.R.*, 745 F.2d 541, 545–46 (9th Cir.1984), the Ninth Circuit agreed that the rule of *Lopez–Mendoza* was based on the conclusion that the exclusionary rule will have little deterrent effect in the civil context. The *Adamson* court went on to say that *Lopez–Mendoza* implicitly rec-

---

1. The *Lopez–Mendoza* court said that in a civil deportation proceeding, there is virtually no need to deter border patrol officers because "the INS has its own comprehensive scheme for deterring Fourth Amendment violations by its officers." 468 U.S. at 1044–45, 104 S.Ct. 3479.

ognized that the exclusionary rule also serves the vital function of safeguarding judicial integrity. *Id.* at 545–46. As is well accepted, the exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *see also United States v. Ceccolini,* 435 U.S. 268, 275, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) ("Recognizing not only the costs, which are often substantial, of the exclusionary rule, we have said that 'application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.' ")

██ Thus, in the civil deportation context, race-based seizures are egregious violations of the Fourth Amendment and the exclusionary rule applies to identity evidence. *Gonzalez–Rivera v. INS,* 22 F.3d at 1446, 1452; *Orhorhaghe v. INS,* 38 F.3d at 497, 501. It follows that the exclusionary rule must also apply to identity evidence in a criminal context when the seizure is race-based. The exclusionary rule's purposes of deterrence and judicial integrity are clearly implicated in a criminal case such as this one. Since any fingerprint exemplar obtained by the government would be excluded in a civil deportation proceeding (even though the exclusionary rule is generally not justified by the rule's purposes of deterrence and judicial integrity), it would make no sense to permit the fingerprint exemplar to be admitted in this criminal proceeding (where rule's purposes of deterrence and judicial integrity are recognized and important).

The government argued at oral argument that any possible application of the exclusionary rule to identity evidence must be limited to the most egregious constitu-

tional violations. In support of this argument, the government cites *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), and *United States v. Alvarez–Machain,* 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). The government argues that in both these cases, the court said that the exclusionary rule cannot reach to suppressing identity evidence, even though both cases involved very egregious constitutional violations—in *Frisbie,* the defendant was kidnaped by police officers and carried across state lines, and *Alvarez–Machain,* the defendant was kidnaped by federal agents and brought to the United States in violation of extradition treaties. I disagree with the government's argument. Neither case involved race-based illegal arrests such as those discussed in *Gonzalez–Rivera* and *Orhorhaghe,* and this court can find no authority for the proposition that there is a sliding scale for ranking egregious constitutional violations for application of the exclusionary rule.

The court concludes that the fingerprint exemplar in this case implicates judicial integrity and the deterrance purpose of the exclusionary rule. To permit the exemplar would be to ignore the most obvious and offensive of constitutional violations and the deterrence goal of the rule. Therefore, the court concludes that the seizure in this case, which the court has already concluded was illegal because it was race-based, was an egregious violation of the Fourth Amendment and therefore the exclusionary rule applies to identity evidence in this criminal proceeding.

The government's motion to compel fingerprint exemplar (doc. 38) is DENIED.

IT IS SO ORDERED.