# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

FILIMON GARCIA-BELTRAN,
          *Defendant-Appellant.*

No. 05-30434

D.C. No.
CR-01-00336-BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted November 18, 2005*
Portland, Oregon

Filed April 6, 2006

Before: Susan P. Graber and Johnnie B. Rawlinson,
Circuit Judges, and S. James Otero,** District Judge.

Opinion by Judge Otero

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable S. James Otero, United States District Judge for the
Central District of California, sitting by designation.

---

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, and Nancy S. Bergeson, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Kent S. Robinson, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

---

**OPINION**

OTERO, District Judge:

Defendant-appellant Filimon Garcia-Beltran appeals the district court's grant of the government's motion to require Garcia-Beltran to provide a pretrial fingerprint exemplar. The district court granted this motion after having first suppressed defendant's fingerprint exemplars taken while defendant was in custody after an arrest lacking probable cause. The decision to suppress defendant's fingerprints followed from the district court's finding that the fingerprints had been taken for both investigative and identification purposes. The district court's finding came at the direction of this court to hold an evidentiary hearing to determine the government's purpose in taking the fingerprints.

Garcia-Beltran contends that the law of the case doctrine and the rule of mandate preclude the district court from granting the motion to compel a new set of fingerprint exemplars. In addition, Garcia-Beltran asserts that, without an independent basis for fingerprinting, the evidence is subject to the exclusionary rule and, hence, cannot be used by the government at trial. We reject both arguments, and we affirm the district court's ruling on the government's motion to require Garcia-Beltran to provide a pretrial fingerprint exemplar.

I

The government charged defendant-appellant Filimon Garcia-Beltran with violating 8 U.S.C. § 1326(a) and (b)(2), illegal re-entry after deportation, and violation of 8 U.S.C. § 1325(a), illegal reentry without inspection. Following his arraignment and plea of "Not Guilty," Garcia-Beltran filed a Motion to Suppress certain evidence; he particularly objected to the use of fingerprint exemplars that had been taken of him following his arrest. The district court denied the motion. Thereafter, Garcia-Beltran entered a conditional guilty plea for violation of 8 U.S.C. § 1326(a), thereby preserving his right to appeal.

Garcia-Beltran appealed the district court's denial of his Motion to Suppress. This court held that an evidentiary hearing was needed to determine if the fingerprints at issue in Garcia Beltran's Motion to Suppress had been taken for investigative purposes or for identification purposes. We determined that fingerprints taken solely for investigative purposes must be suppressed, while those taken for identification purposes would not be suppressed. *United States v. Garcia-Beltran*, 389 F.3d 864, 865 (9th Cir. 2004). As a result of this court's analysis, the district court's judgment was vacated and the matter remanded for an evidentiary hearing.

As instructed by this court, the district court held an evidentiary hearing to determine the purposes for which Garcia-

Beltran was fingerprinted after his arrest. We rely on the factual findings of the district court pursuant to this court's remand order for our factual narrative, reviewing for clear error. *United States v. Guzman-Bruno*, 27 F.3d 420, 421 (9th Cir. 1994).

The exact circumstances prior to the arrest that occurred on August 14, 2001, are largely unimportant, as the government conceded that Garcia-Beltran was arrested without probable cause. However, there are a few noteworthy background facts pertaining to the circumstances immediately following the arrest. After his arrest, Garcia-Beltran produced a Resident Alien Card and a Mexican voting card in the name of "Jose Luis Garcia-Hernandez." The arresting officer was suspicious of these documents and determined that they were forgeries. The officer issued defendant-appellant a "Uniform Criminal Citation" accusing him of "Forgery 2." After issuing this citation, the officer left Garcia-Beltran at the Multnomah County Detention Center (MCDC)[1] for a "mug/print." Garcia-Beltran's true identity was yet unknown at this time.

The district court found that once Garcia-Beltran was at MCDC, another Portland police officer took the first of three sets of Garcia-Beltran's fingerprints as part of the "mug/print" process. A records search that was conducted based on these fingerprints showed that defendant-appellant had previously been identified by the Portland Police Bureau as "Garcia, Filimon Beltran, DOB 112264" and by immigration authorities as "Garcia Beltran, Taurino."

Once Garcia-Beltran was so identified and while he was still at MCDC, the Portland Police Bureau contacted federal immigration officials[2] with a "Special Report." The Special

---

[1]The Multnomah County Detention Center is the county booking facility and jail located in Portland, Oregon.

[2]At the time of Garcia-Beltran's arrest, the Immigration and Naturalization Service (INS) was the federal agency in charge of handling immigration-related offenses. The INS is now known as Immigration and Customs Enforcement (ICE).

Report stated that defendant-appellant had been identified by fingerprint comparison as being the persons named above and was being detained. The report also contained Garcia-Beltran's "A-File" number, tying him to his A-File. In response to the Special Report, immigration officials requested that a detainer be placed on Garcia-Beltran. Immigration officials also were alerted to Garcia-Beltran's previous charges of illegal entry and his deportation earlier that year.

The following day, Garcia-Beltran was fingerprinted again, this time by immigration authorities. This second set of fingerprints was compared to the fingerprint found on the Warrant of Deportation located in Garcia-Beltran's A-File. Because this second set of fingerprints was later deemed inadequate for identification purposes, Garcia-Beltran was fingerprinted yet again, for the third and final time. This set of fingerprints was compared against the fingerprint on the Warrant of Deportation, and it was found that the prints matched.

Based on these findings of fact and concessions made by the government, the district court focused on Garcia-Beltran's third set of fingerprints for the purposes of the remand order. The district court found that the third set of fingerprints had been taken in part for investigative purposes and consequently granted the Motion to Suppress as to the Third Set of Fingerprints. Garcia-Beltran then withdrew his previous conditional guilty plea. Shortly thereafter, the government submitted a Motion for Order Requiring Defendant to Provide Fingerprint Exemplar for use at trial, which the district court granted. Following this ruling, Garcia-Beltran once again entered a conditional guilty plea.

Garcia-Beltran timely appealed to this court the district court's granting of the government's motion to compel Garcia-Beltran's submission of a new set of fingerprint exemplars.

## II

On appeal, Garcia-Beltran contends that the law of the case doctrine and the rule of mandate preclude the district court from ordering the new set of fingerprints, unless the government proves an independent source.

## A

**[1]** According to the law of the case doctrine, on remand a lower court is bound to follow the appellate court's decision as to issues "decided explicitly or by necessary implication." *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982). However, the lower court is so bound only as to those issues addressed by the appellate court. *See United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (quoting *Luckey v. Miller,* 929 F.2d 618, 621 (11th Cir. 1991)). Hence, in applying the law of the case doctrine, the district court in the instant matter was required to follow this court's decisions, but only as to issues actually addressed and explicitly or implicitly decided upon in the court's previous disposition, *Garcia-Beltran*, 389 F.3d 864.

**[2]** The lower court must also adhere to the rule of mandate. "The rule of mandate is similar to, but broader than, the law of the case doctrine." *Cote*, 51 F.3d at 181 (citing *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *accord Stamper v. Baskerville,* 724 F.2d 1106, 1107 (4th Cir. 1984). Thus, in the instant matter, the district court cannot grant the government's motion if so doing would exceed the boundaries as delineated by this court's previous mandate.

## B

Garcia-Beltran's main contention in applying the law of the case doctrine and the rule of mandate is that *Garcia-Beltran*

requires the suppression of *all* fingerprints (1) if the initial fin-
gerprinting of defendant-appellant was done for investigatory
purposes and (2) if the government has not proved an inde-
pendent source. In support of this assertion, Garcia-Beltran
finds fault with the district court's reliance on *United States
v. Parga-Rosas*, 238 F.3d 1209 (9th Cir. 2001), vis-à-vis this
court's reference to the same case in its remand order. How-
ever, Garcia-Beltran's attempts to broaden the scope of the
court's remand order by distinguishing *Parga-Rosas* from the
instant matter are misguided.

In *Parga-Rosas*, fingerprints of an illegal alien taken imme-
diately after an illegal arrest were suppressed while this court
affirmed the district court's decision not to suppress finger-
print exemplars taken five months after the arrest. The facts
in *Parga-Rosas* differed from those in the instant matter in
that there the defendant produced a photocopy of a "green
card" issued in his name when asked for identification by a
law enforcement official. 238 F.3d at 1211. Using the number
on the green card, law enforcement was able to locate the
immigration files connecting the defendant to a prior deporta-
tion. *Id.* In contrast, in the instant matter Garcia-Beltran gave
law enforcement officials a false name and false identifica-
tion. Hence, Garcia-Beltran was correctly identified only after
his fingerprints, taken after a concededly illegal arrest, were
matched in the relevant database. Garcia-Beltran hopes to use
this factual difference to distinguish *Parga-Rosas*, thereby
escaping from the same fate of having this court uphold the
district court's decision not to suppress a later set of finger-
print exemplars.

Garcia-Beltran's argument is unpersuasive because this
court's discussion of *Parga-Rosas* in its earlier disposition of
the instant matter is fully consistent with the district court's
subsequent decision to grant the government's motion to com-
pel a new set of fingerprints from Garcia-Beltran. *Garcia-
Beltran* was limited to the question of suppression of an *initial*
set of fingerprints, while *Parga-Rosas* and the instant matter

deal with the question of suppression of a later set of finger-prints.

**[3]** This court clarified the boundaries of its decision in *Garcia-Beltran* in its recent opinion, *United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005) (per curiam). *Ortiz-Hernandez* is similar to the matter at hand but differs in that there the district court denied the government's motion to compel a new set of fingerprint exemplars after having first suppressed fingerprints taken after an illegal arrest. In that case, this court affirmed the initial suppression and reversed as to the denial of the motion to compel a new set of finger-prints. *Id.* at 570.

Indeed, the court in *Ortiz-Hernandez* explicitly stated:

> [R]eliance on *Garcia-Beltran* is inapposite here. The *Garcia-Beltran* court considered only whether an initial set of fingerprints must be suppressed if obtained with an investigatory purpose. 389 F.3d at 867-68. There is no discussion of whether a second set of fingerprints could later be compelled to identify a defendant once he was under indictment.

*Id.* at 577 n.4. After thus distinguishing *Ortiz-Hernandez* from *Garcia-Beltran*, the court proceeded to apply *Parga-Rosas*: "Only the *Parga-Rosas* court has addressed that issue [of later compelling a second set of fingerprints to identify a defendant once he has been indicted], and we follow that approach here." *Id.* Hence, Garcia-Beltran's argument that the law of the case doctrine and the mandate rule preclude the district court's ruling granting the government's motion to compel a new set of fingerprint exemplars necessarily fails. This court has already explicitly stated that the *Garcia-Beltran* remand order was limited to the question of suppression of an initial set of fingerprints; the remand order simply did not consider whether a new set of fingerprints could later be compelled to identify the defendant after indictment.

III

Garcia-Beltran continues to argue that, because he was arrested illegally, and his true identity discovered only as a result of investigatory fingerprinting, all evidence derived from that illegal arrest is thus tainted under *Wong Sun v. United States*, 371 U.S. 471 (1963). Accordingly, Garcia-Beltran maintains that the government must produce an independent basis for fingerprinting before the government can make use of any of the evidence.

**[4]** We look for guidance in the development of evidentiary case law as it pertains to the exclusionary rule by the U.S. Supreme Court and this circuit. The Supreme Court has discussed fingerprint evidence beginning with its fundamental holding in *Davis v. Mississippi*, 394 U.S. 721 (1969). In *Davis*, the defendant was one of "at least 24 Negro youths" who were rounded up and fingerprinted in the police's attempt to discover the perpetrator of a rape. *Id.* at 722. The Court there ruled that despite the inherent trustworthiness of fingerprint evidence, the defendant's fingerprints, which matched with fingerprints found at the scene of the crime, were subject to the exclusionary rule as evidence resulting from an arrest without probable cause. *Id.* at 723-24. Years later, the Court affirmed the *Davis* holding in *Hayes v. Florida*, 470 U.S. 811, 813 (1985) (reversing the state district court of appeal's affirmance of use of fingerprint evidence taken during police detention without probable cause). Hence, it is primarily based on *Davis* and *Hayes* that fingerprints taken for an investigatory purpose are suppressed. *See Garcia-Beltran*, 389 U.S. at 867; *accord Ortiz-Hernandez*, 427 F.3d at 576.

**[5]** The Court has also focused more directly on the admissibility of evidence establishing identity. In *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1035 (1984), the Supreme Court encountered the situation where Lopez-Mendoza, an illegal alien, objected to his deportation hearing solely on the ground

that he had been arrested illegally, i.e., by INS agents lacking a "warrant to search the premises [where Lopez-Mendoza was apprehended] or to arrest any of its occupants." The Court rejected Lopez-Mendoza's argument, stating: "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.* at 1039. In essence, the Court declined to hold that the consequences of an illegal arrest, search, or interrogation is to let the defendant go free because of the unlawfulness of the arrest, search, or interrogation. Instead, *Lopez-Mendoza* established that a defendant, including his identity, is properly before a court in a criminal or civil proceeding despite the initial illegal police action.

The Ninth Circuit has applied the Supreme Court's holding in *Lopez-Mendoza* to numerous situations, both similar and dissimilar in underlying facts to those found here.[3] Notably, in *United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir.

---

[3]In *United States v. Ramirez-Garcia*, 269 F.3d 945 (9th Cir. 2001), after applying for a lease and credit check, the defendant was similarly charged with a violation of 8 U.S.C. § 1326 and sought to suppress certain evidence. This court, citing *Lopez-Mendoza*, noted there that "the information he seeks to suppress, his identity and the fact of his presence within the United States, cannot be suppressed." *Id.* at 947.

In *United States v. Diaz-Juarez*, 299 F.3d 1138, 1140 (9th Cir. 2002), a narcotics-distribution conspiracy case, despite the lack of unanimity in the underlying disposition of the case, there was no dissent concerning the suppression of identity evidence. "From our caselaw [sic], it is clear that one's identity cannot be suppressed." *Id.* at 1148 n.11 (Ferguson, J., dissenting).

In *United States v. del Toro Gudino*, 376 F.3d 997, 998 (9th Cir. 2004), *cert. denied*, 125 S. Ct. 1356 (2005), this court affirmed the district court's denial of the defendant's motion to suppress the false statement of his identity and the subsequent discovery of his true identity through a fingerprint and photograph match. In addressing the defendant's contention that the evidence should have been suppressed as a result of an unconstitutional stop, the court noted: "Our cases treat identity different from other kinds of evidence." *Id.* at 1000.

1994), the defendant was arrested without probable cause and later charged with violating 8 U.S.C. § 1326. Guzman-Bruno had admitted his name and birthdate to law enforcement officials and accordingly was connected to his prior criminal history and deportations. *Id.* at 421. Guzman-Bruno objected that the district court should have suppressed evidence of his identity and his prior record. *Id.* This court found the evidence admissible, applying the holding in *Lopez-Mendoza* and prior Ninth Circuit case law.[4] *Id.* at 422. Quoting from an earlier Ninth Circuit opinion, this court noted that " 'there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity.' " *Id.* at 421 (alteration omitted) (quoting *Hoonsilapa v. INS*, 575 F.2d 735, 738, *modified*, 586 F.2d 755 (9th Cir. 1978)).

[6] The Ninth Circuit has consistently held that evidence concerning the identity of a defendant, obtained after an illegal police action, is not suppressible as "fruit of the poisonous tree." Garcia-Beltran's efforts to characterize his identity evidence as fruit of the poisonous tree in order to require the government to provide an independent basis to purge the allegedly tainted evidence are but fruitless. This court's lengthy history of holding that identity evidence cannot be suppressed extends to the instant matter and, hence, to granting of the government's motion to compel a new set of fingerprint exemplars from Garcia-Beltran.

Garcia-Beltran, in an effort to sway the court's decision, cites a recent district court case, *United States v. Bowley*, No.

---

[4]Even prior to *Lopez-Mendoza*, this court has held that evidence concerning the identity of a defendant and obtained as a result of an illegal arrest does not fall within the confines of the exclusionary rule. *See Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir. 1978) (allowing use of contents of alien's INS files to establish identity as alien subject to deportation after illegal arrest and search of home); *accord United States v. Orozco-Rico*, 589 F.2d 433, 435 (9th Cir. 1978) (finding no right to suppression of illegal alien's governmental files, including record of prior deportations, following allegedly illegal arrest).

CRIM. 2004/0169, 46 V.I. 646, 2005 WL 1398632 (D.V.I. June 8, 2005). In *Bowley*, the District Court of the Virgin Islands held that the defendant's identity as an illegal alien, discovered through fingerprint comparison, was fruit of the poisonous tree as the result of an illegal arrest. Notable about the *Bowley* decision is that the district court applied case law from circuits beyond its own (Third Circuit) to arrive at this holding. Considering that the *Bowley* court cited Ninth Circuit authority in arriving at a holding that seems contrary to what the Ninth Circuit itself would hold, an examination of the circuit law cited in *Bowley* seems appropriate.

In arriving at its decision in *Bowley*, the district court relied principally on *United States v. Guevara-Martinez*, 262 F.3d 751 (8th Cir. 2001). In *Guevara-Martinez*, the defendant was arrested after an illegal stop by police. *Id.* at 752. Guevara-Martinez's true identity was established only after he was fingerprinted, thereby linking him to his INS file. *Id.* The court in *Guevara-Martinez* declined to apply *Lopez-Mendoza*, reasoning that the Supreme Court's reference to the suppression of identity in *Lopez-Mendoza* was "tied only to a jurisdictional issue, not to an evidentiary issue." *Id.* at 753. In other words, the Eighth Circuit limited *Lopez-Mendoza*'s holding to the question of whether or not a court has jurisdiction over a defendant's body after an illegal arrest, and not whether or not a court must suppress evidence as to a defendant's true identity obtained after an illegal arrest. The Eighth Circuit ultimately affirmed the district court's granting of the motion, applying *Davis v. Mississippi*. The court explained its holding:

> In the absence of evidence that Guevara-Martinez's fingerprinting resulted from routine booking procedures, rather than for the purpose of pursuing INS-related proceedings against him, we conclude that the district court properly suppressed the evidence.

*Id.*

This court in *Garcia-Beltran* cited with approval the Eighth Circuit's analysis in *Guevara-Martinez*. 389 F.3d at 868. Indeed, the issue in *Guevara-Martinez* was parallel to that in *Garcia-Beltran*: the suppression of initial fingerprints being dependent upon the purpose for which the fingerprints are taken following an illegal arrest. Ultimately, there is no conflict between the holdings in *Guevara-Martinez* and *Garcia-Beltran*.

However, as pertains to the issues presented in the instant matter, we recognize that the decisions of the Eighth Circuit might yield a different outcome than the case law of this circuit. The Eighth Circuit's limitation of *Lopez-Mendoza* would require that court to suppress post-indictment fingerprints as not having resulted from "routine booking procedures." The Eighth Circuit would thereby require an independent basis to purge the tainted fingerprints, much as Garcia-Beltran argues. Regardless of this court's speculation as to how the Eighth Circuit might rule on the instant motion, it is clear that the application of *Guevara-Martinez* to the matter at hand is limited, as *Guevara-Martinez* dealt with the suppression of initial fingerprints taken after an illegal arrest, not a later set of fingerprints taken for identification purposes.

Seemingly, the holding of the Eighth Circuit is what the court in *Bowley* follows. As further support for its holding that the fingerprint evidence is fruit of the poisonous tree, the *Bowley* court also cites *United States v. Olivares-Rangel*, 324 F. Supp. 2d 1218 (D.N.M. 2004). While the Tenth Circuit has yet to affirmatively rule on the issue, the district court in *Olivares-Rangel* has agreed with the Eighth Circuit. *Id.* at 1224. In a case involving the suppression of identification and fingerprint evidence, the district court found the reasoning of the Eighth Circuit persuasive and consequently suppressed the evidence flowing from an illegal police stop. *Id.*

Yet the Ninth Circuit's interpretation of *Lopez-Mendoza* does not stand alone among the circuits. In a case concerning

an illegal alien stopped unlawfully by Border Patrol, the Fifth Circuit, in *United States v. Roque-Villanueva*, 175 F.3d 345, 346 (5th Cir. 1999), affirmed the district court's denial of the defendant's motion to suppress. The Fifth Circuit court held: "Even if the Defendant was illegally stopped, neither his identity nor his INS file [is] suppressible." *Id.*

Despite the apparent difference in opinion among the circuits as to the scope of the Supreme Court's ruling in *Lopez-Mendoza*, the law of this circuit is clear. In *Ortiz-Hernandez* the court wrestled with the seeming conflict in end result in the situation where an initial set of fingerprints is suppressed but a new set of fingerprints is compelled for identification purposes at trial soon thereafter. The court acknowledged this seeming conflict, ultimately determining:

> While the original set of Ortiz-Hernandez's fingerprints should be suppressed as wrongfully obtained, the government is now aware of Ortiz-Hernandez's identity; it may rely on his identity, as well as his criminal and immigration record, in bringing § 1326 criminal charges against him. . . .

> The government now may bring Ortiz-Hernandez to trial on the illegal reentry indictment and compel him to submit to another fingerprinting based on that arrest and arraignment and use the evidence for purposes of identification at trial.

*Ortiz-Hernandez*, 427 F.3d at 577. The court found this result fully consistent with prior Ninth Circuit case law: "This result is consistent with and compelled by *United States v. Parga-Rosas,* 238 F.3d 1209 (9th Cir. 2001)." *Id.* Further, the court stated:

> As was the case in *Parga-Rosas,* the government already knows Ortiz-Hernandez's identity. The new set of fingerprints the government now requests,

after the federal grand jury indictment for a different offense has been returned, are not sought out of "an investigative purpose" but "serve only to further establish his identity." *See Garcia-Beltran*, 389 F.3d at 867 (considering *Parga-Rosas*, 238 F.3d at 1215).

*Id.*

**[7]** As in *Ortiz-Hernandez*, the initial set of fingerprints obtained by the police following Garcia-Beltran's unlawful arrest was rightfully suppressed. However, also as in *Ortiz-Hernandez*, the government "is now aware of [Garcia-Beltran]'s identity." *Id.* Therefore, the government may make use of that information in bringing Garcia-Beltran to face charges for illegal reentry and to require the defendant to submit new fingerprint exemplars to establish his identity at trial.

The court in *Ortiz-Hernandez* also considered the effect of its holding on the earlier suppression of the initial set of fingerprints. The court acknowledged, "Admittedly, our holding here limits the theoretical effect of suppressing the initial set of wrongfully obtained fingerprint exemplars, but this result is compelled by the nature of the evidence Ortiz-Hernandez is seeking to suppress—who he is." *Id.* at 578. Under *Lopez-Mendoza* and *Ortiz-Hernandez*, we must affirm.

AFFIRMED.