**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
        *Plaintiff-Appellee,*

v.

JOSE INES AMBRIZ-AMBRIZ,
        *Defendant-Appellant.*

No. 08-30431

D.C. No.
9:08-CR-00023-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
October 13, 2009—Seattle, Washington

Filed November 10, 2009

Before: Richard D. Cudahy,* Senior Circuit Judge,
Johnnie B. Rawlinson and Consuelo M. Callahan,
Circuit Judges.

Opinion by Judge Callahan

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

## COUNSEL

Anthony R. Gallagher, Federal Defender, John Rhodes, Assistant Federal Defender (argued), Johnna Rizza, and Stephanie Deboer, Legal Interns, Federal Defenders of Montana, Missoula, Montana, for the defendant-appellant.

William W. Mercer, United States Attorney, and Timothy J. Racicot, Assistant United States Attorney (argued), Missoula, Montana, for the plaintiff-appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Jose Ines Ambriz-Ambriz (Ambriz) challenges the jury instructions and his conviction of being a previously removed alien found in the United States in violation of 8 U.S.C. § 1326. He asserts that because he was detained at a port of entry he was entitled to a jury instruction addressing the official restraint doctrine. We conclude that because Ambriz had not legally left the United States on the date of his detention, and was not entering the United States from a foreign country, the official restraint doctrine is inapplicable, and we affirm his conviction and sentence.

I

Ambriz, a Mexican citizen, was convicted of an aggravated felony in 1980 and deported from the United States in 1985. Sometime thereafter, he reentered the United States without inspection or permission.

It appears that on February 28, 2008, Ambriz sought to travel by car from the United States to Canada, possibly for some medical procedure. In any event, the vehicle in which he was traveling with two other individuals was denied entry into Canada. As a result, the vehicle was forced to proceed back into the United States where it stopped for inspection at the Roosville Port of Entry.

A U.S. Customs and Border Patrol Agent requested that Ambriz produce some identification. Ambriz claimed to be a

United States citizen and produced a California driver's license. The officer directed the driver of the vehicle to pull into a secondary inspection area for further investigation. When fingerprints and a record check revealed that Ambriz was a Mexican citizen and had been previously deported, he was arrested.

One of the officers responsible for transporting Ambriz from the port of entry to the Sheriff's Office in Missoula testified at trial that Ambriz confessed to his illegal presence in the United States. The officer testified that Ambriz "said something to the effect of 'I'm tired of being illegal in your country and I'm tired of hiding.' " Ambriz did not object to the admission of this statement at trial.

II

Ambriz was indicted for illegal reentry in violation of 8 U.S.C. § 1326(a). Section 1326(a) states, in relevant part:

> any alien who - - (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) **enters, attempts to enter, or is at any time found in**, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(Emphasis added). Count I of the indictment, however, stated that Ambriz "was **found to have reentered** the United States without receiving permission from the Secretary of the Department of Homeland Security . . . to apply for re-entry, in violation of 8 U.S.C. § 1326(a) and (b)." (emphasis added and citation omitted).

At his jury trial, Ambriz objected to including the phrase "found to have reentered" in the jury instruction. Although the district court rejected Ambriz's proposed instruction, it agreed

that the statute did not include the language "found to have reentered," and struck that language from the government's proposed elements instruction.

Ambriz then sought an instruction on the term "found in." Relying on our decisions in *United States v. Zavala-Mendez*, 411 F.3d 1116, 1121 (9th Cir. 2005) and *United States v. Cruz-Escoto*, 476 F.3d 1081, 1085 (9th Cir. 2007), he proffered the following instruction: "[t]he alien who crosses the border at a designated location and proceeds directly in the manner designated by the Government to the border station where he then presents himself to the authorities has not yet been found in the United States for purposes of 8 U.S.C. § 1326(a)."

The district court rejected the proposed instruction, noting that the facts of this case differed from the cited cases in which the individuals entered the United States from a foreign country and never gained access into the United States.[1] The judge gave the following instruction on Count I:

> In order for the Defendant to be found guilty of the charge, the Government must prove each of the following elements beyond a reasonable doubt: First, that the Defendant is an alien; that is, not a United States citizen. Second, the Defendant was previously removed from the United States. Third, the Defendant was found in the United States without the written consent of the Attorney General of the United States or its successor, the Secretary of the Department of Homeland Security to apply for permission to reenter the United States.

---

[1]In *Cruz-Escoto*, the defendant was first observed by a Border Patrol Agent running northbound in a channel that forms the border between the United States and Mexico. 476 F.3d at 1084. In *Zavala-Mendez*, the defendant was a passenger in a car that crossed into Alaska from the Yukon Territories, Canada. 411 F.3d at 1117.

Ambriz also sought a specific time and location instruction. He proposed an instruction stating that "[o]n or about February 28th, 2008, at Roosville, Flathead County in the State and District of Montana, the Defendant was found in the United States." The district court declined to use this language noting that there was similar language in the indictment and in another instruction, and commenting that counsel was free to address time and location in his closing argument.

Ambriz moved several times during trial for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government had presented insufficient evidence for a reasonable jury to determine that he was "found in" the United States beyond a reasonable doubt. The judge denied the motions and the jury found Ambriz guilty on both counts.[2] The district court sentenced Ambriz to twenty-eight months in prison, followed by three years of supervised release. Ambriz filed a timely notice of appeal.

### III

Mr. Ambriz's primary contention on appeal is that he was not "found in" the United States because he was apprehended at a port of entry and thus was under "official restraint" and had not officially entered the United States. This argument misconstrues the official restraint doctrine, which, properly understood, pertains to an individual entering the United States from a foreign country, and thus is inapplicable to Mr. Ambriz's situation.

[1] The official restraint doctrine has been applied to two situations. First, it applies where individuals "fly to the United States from some other country, get out of the airplane at the airport and proceed directly to the customs inspection counter

---

[2]In a superseding indictment, the government added a charge of false impersonation of a United States citizen under 18 U.S.C. § 911. Mr. Ambriz does not challenge his conviction on this count on appeal.

where they present themselves." *Zavala-Mendez*, 411 F.3d at 1118. Although we have not considered such a case, "[o]ur sister circuits agree that in such a case, even if the person is a previously-deported alien without permission to reenter, he cannot be convicted of being 'found in' the United States (as opposed to attempting to enter)." *Id.* (citing *United States v. Angeles-Mascote*, 206 F.3d 529, 530-32 (5th Cir. 2000) and *United States v. Canals-Jimenez*, 943 F.2d 1284, 1286-89 (11th Cir. 1991)).

**[2]** We have, however, addressed the second situation: where an alien attempts to sneak across the border but is observed and ultimately arrested by the authorities. *United States v. Bello-Bahena*, 411 F.3d 1083, 1087 (9th Cir. 2005). ("It is well established in this circuit that official restraint includes constant governmental observation or surveillance from the moment of entry, and that those who are under such surveillance for the entire time they are present cannot be found to have entered the United States for purposes of § 1326.").

**[3]** This case presents neither of these situations because the factual predicate for those situations is not present: Ambriz was not attempting to enter the United States.**³** He was not flying into the country or attempting to cross the border. Rather, as the evidence at trial indicated, he had been in the United States illegally for some time when he sought to leave the United States for Canada and he only arrived at a port of entry because Canada denied him admission. Although Ambriz may have technically traveled onto Canadian land

---

**³**Because Ambriz presumably did not have any intent to enter the United States, as he never legally left the country on February 28, 2008, it is doubtful that Ambriz could be successfully prosecuted under 8 U.S.C. § 1326(a)(2) for "entering" or "attempting to enter" the United States. Thus, if the court were to adopt Ambriz's argument that he cannot be prosecuted for being "found in" the United States, this could lead to the untenable result that the government could not prosecute Ambriz under any of the provisions of subsection (a)(2).

from the United States, he was never legally in Canada, and thus, when he appeared at the port of entry, he was not entering the United States from a foreign country.

**[4]** Indeed, the rationale underlying the official restraint doctrine compels our focus on Ambriz's "legal" status. An alien who gets off an airplane at an airport or who sneaks across the border is technically on United States land. The official restraint doctrine, however, distinguishes between a person's physical presence and legal presence in the United States. *See Angeles-Mascote*, 206 F.3d at 531 (noting that " 'actual entry' has been found by most courts to require both physical presence in the country as well as freedom from official restraint"). This focus supports our determination that despite Ambriz's physical trespass into Canada from the United States, he was never legally in Canada on February 28, 2008, and thus was not entering the United States from a foreign country.

**[5]** Accordingly, we reject Ambriz's contention that the district court erred in denying his motion for judgment of acquittal, which we review de novo. *Bello-Bahena*, 411 F.3d at 1087. In doing so, "[w]e must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002)). Here, there was more than enough evidence from which a juror could reasonably conclude that Ambriz was not entering the United States from Canada and thus was "found in" the United States for purposes of § 1326.

**[6]** We also reject Ambriz's argument that the district court should have given his proposed jury instruction defining the phrase "found in." Although a defendant "is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence . . . [w]here the parties dispute whether the evidence

supports a proposed instruction, we review a district court's rejection of the instruction for abuse of discretion." *Bello-Bahena*, 411 F.3d at 1088-89 (internal quotation marks and citations omitted). Here, even assuming that Ambriz's proposed instruction was an accurate statement of the law, it was properly rejected as inapplicable to this case. *See Cruz-Escoto*, 476 F.3d at 1087 (noting that even if a "proposed instruction is an accurate statement of the law" the district court may properly refuse to give it if it is "inapplicable to th[e] case"). Because the uncontroverted evidence was that Ambriz never legally left the United States on February 28, 2008, the official restraint doctrine was not applicable even though he was arrested at a border station.

**[7]** Furthermore, we reject Ambriz's arguments that the jury instructions prevented the jury from performing its constitutionally mandated fact-finding function. He asserts that the instructions did not adequately define "found in" and did not include a time and place instruction. The instructions properly set forth that the government had to prove that Ambriz was an alien, not a United States citizen, had been previously removed from the United States, and was "found in" the United States without the permission of the Attorney General. *See United States v. Hernandez*, 189 F.3d 785, 789 (9th Cir. 1999). Ambriz only contested whether he was "found in" the United States. Other than his assertion of the official restraint doctrine, he offers no argument that the jury could not infer the meaning of "found in" from its common use. We conclude that Ambriz has failed to show that the jury was confused or misled by being allowed to give the term an ordinary, common sense meaning.[4]

---

[4]We have previously held that "[a] district court does not commit plain error by failing to define a word when it 'is a common word which an average juror can understand and which the average juror could have applied to the facts of [the] case without difficulty.' " *United States v. McCaleb*, 552 F.3d 1053, 1059 (9th Cir. 2009) (quoting *United States v. Chambers,* 918 F.2d 1455, 1460 (9th Cir.1990) (holding that failure to

Ambriz's allegation that the district court committed reversible error in failing to give a time and place instruction is also unavailing. In the case cited by Ambriz, *United States v. Tsinhnahijinnie*, 112 F.3d 988 (9th Cir. 1997), the defendant was charged with sexual abuse in 1992, but the evidence at trial addressed his "sexual inclination toward children in 1994." *Id*. at 990. This, we concluded, was too great a disparity between the date in the indictment and the evidence to allow the defendant to adequately prepare his defense. *See id*. at 991-92. In Ambriz's case, all the evidence related to events that took place on one date, February 28, 2008, and at one location, the Roosville Port of Entry. Moreover, the instructions given by the court required that the government show where and when Ambriz was "found in" the United States. Neither Ambriz nor the jury were in any way confused as to the time and location of the charged offense.[5]

## IV

[8] Because Ambriz's travel on February 28, 2008 began in the United States and because he never officially entered another country, the official restraint doctrine is not applica-

---

define "knowingly" was not plain error)); *see also United States v. Garza-Juarez*, 992 F.2d 896, 910 (9th Cir. 1993) (holding that failure to define "possession" was not plain error). Other than attempting to graft the official restraint doctrine onto the definition of the phrase "found in," Ambriz offers no reason for doubting that "found in" has a common definition that the jurors understood and were able to apply to the facts in his case.

[5]Ambriz also alleges that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government was required to present his prior conviction to a jury and prove it beyond a reasonable doubt before it could be used to enhance the statutory maximum of his sentence. However, as Ambriz recognizes, we rejected that legal argument in *Cruz-Escoto*, 476 F.3d at 1090, and this panel is bound by that decision. *See United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992). Similarly, Ambriz recognizes that his allegations of "the disparate impact of fast-track programs" were rejected in *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir. 2009), and that determination is also binding on us.

ble to his situation. He was properly convicted under 8 U.S.C. § 1326(a) of being a previously removed alien who was found in the United States without permission. Ambriz's conviction and sentence are **AFFIRMED**.