REENA RAGGI, Circuit Judge,
concurring in the judgment:
The court today reverses defendant Vasquez’s conviction for being “found in” the United States after deportation without the permission of the Attorney General in *103 violation of 8 U.S.C. § 1326. I join in that judgment, but write separately because I reach that conclusion somewhat differently from my colleagues in the majority. Specifically, I construe § 1326 to require proof of a defendant’s general intent to be in the United States. In the case of a defendant charged with being “found in” the United States illegally, that means proof either that a defendant was voluntarily in the United States when authorities found him physically present in this country, or that his presence in the United States at the time he was so found was a result of his last voluntary return to the United States. Neither circumstance is present here. When Vasquez was “found in” the United States by federal border authorities, he was not here voluntarily; rather, he was forcibly brought here by Canadian officials. It was this compelled return to the United States — not any earlier return preceding Vasquez’s departure for Canada— that caused Vasquez to be “found” in this country. In these circumstances, I agree that the judgment of conviction must be reversed.
There is no need for me to repeat facts detailed by the majority. I note simply that Vasquez submits that, as a matter of law, he cannot stand convicted of having been “found in” the United States after a prior deportation because (1) United States authorities only found him in this country when he was involuntarily returned — in handcuffs — by Canadian officials who had just denied him legal entry into their country, and (2) to the extent he had voluntarily returned to the United States after deportation some years before crossing into Canada, he was never found in this country by United States officials during that time.
Neither at trial nor on appeal has the government disputed that a defendant’s presence in the United States must be voluntary to support a § 1326 conviction. Indeed, the indictment so charges, and the jury was so instructed in this case. Rather, the government maintains that Vasquez’s presence in the United States cannot be divorced into two parts, one before his unsuccessful entry into Canada, when he was voluntarily in this country but not yet “found” by United States officials, and the other after Canadian authorities returned him to this country in restraints, at which time he was “found” here by federal authorities. The government submits that defendant’s § 1326 crime is properly viewed as continuing, so that his voluntary presence here before he left for Canada, and the government finding him here after his attempt to enter Canada, together satisfy the mens rea and actus reus elements of the crime of conviction.' The district court’s charge supported this theory of culpability, instructing the jury that “a person who is denied entry to a foreign country and is returned to the United States side of the port of entry did not leave the United States even if that person was physically on foreign territory before being brought back into the United States.” A-322.
In explaining why I cannot agree, I briefly consider the two elements of a § 1326 crime. As to the actus reus element of being “found in” this country after deportation, our precedent instructs that the crime is not complete until the government becomes aware of defendant’s illegal presence in this country. See United States v. Williams, 733 F.3d 448, 453 (2d Cir.2013). Here, the government agrees that such awareness occurred only after Vasquez was returned in custody from Canada. At that time, Vasquez’s person was plainly within the geographical borders of the United States. See 2 Leonard B. Sand et al., Modem Federal Jury Instructions: Criminal, Instr. 33A-36 (2011) (hereafter Sand) (“To be found in *104 the United States means to be located in the United States following reentry.”). Nevertheless, a number of our sister circuits, in order to ensure against redundancy in the “enter,” “attempt to enter,” and “found in” prohibitions of § 1326, have held that, where a person unsuccessfully attempts to enter the country through a border point without deception, he cannot yet be “found in” the United States despite his physical presence within the country’s borders because he is under official restraint. See United States v. Angeles-Mascote, 206 F.3d 529, 531 (5th Cir.2000) (holding that alien whose status as previously deported was discovered when he presented himself to immigration and customs authorities at airport was not “found in” United States); United States v. Canals-Jimenez, 943 F.2d 1284, 1287-88 (11th Cir.1991) (same); see also United States v. Zavala-Mendez, 411 F.3d 1116, 1120 (9th Cir.2005) (reaching same conclusion for alien approaching border station in motor vehicle). If we were to agree — a question we need not here decide — that reasoning might itself support reversal of Vasquez’s conviction for being “found in” the United States illegally, on the theory that his conduct admitted at best an attempted reentry.
The government, however, maintains that Vasquez was not here attempting to enter the United States from a foreign country because Canada had, in fact, denied him entry. It argues that, despite his actual physical departure from United States soil and brief physical presence in Canada, Vasquez should be treated as never having left the United States.
Insofar as this argument distinguishes physical from legal presence in a foreign country, suggesting' that the latter is necessary to preclude a defendant who has departed the United States from being “found in” this country upon even involuntary return, I am not convinced. Vasquez may not have been legally present in Canada when he physically crossed into that country, but neither was he ever legally present in the United States before crossing into Canada. The government’s real argument seems to be that where, as here, a defendant surreptitiously enters this country illegally, he somehow remains in this country — even if no longer here physically — until he enters another country lawfully, or at least until he does so free from official restraint. I disagree.
The official restraint doctrine places a limit on our government in proving a § 1326 crime.[1] Thus, to prove unlawful entry or attempted entry, the government must establish that a deported alien came, or tried to come, “into the United States from a foreign port or place while free from official restraint.” Sand at Instr. 33A-36. See Correa v. Thornburgh, 901 F.2d 1166, 1172 (2d Cir.1990) (holding that freedom from official restraint required to have entered United States for purposes of § 1326).[2] Insofar as the statute’s “found in” prohibition was included to cover defendants who surreptitiously entered the United States, courts have required the government to prove “that the defendant actually was in the United States *105 free from official restraint.” Sand at Instr. 33A36, cmt. at 62 & n. 6 (collecting cases). I do not, however, think that the doctrine places a limit on an alien’s ability to depart this country, so that his presence in the United States can fairly be said to continue uninterrupted at the same time that his person is in another country, albeit under restraint by its officials. Indeed, the conclusion borders on the metaphysical, raising concern about the adequacy of the statute’s notice about the criminal conduct proscribed.
This concern is only aggravated when one considers the crime’s mens rea element. As already noted, the government does not dispute that § 1326 requires proof of mens rea. But as we consider precisely what intent is required to support a “found in” conviction — a matter not previously addressed by this court — we confront the challenge of a silent statutory text. See United States v. Champegnie, 925 F.2d 54, 55 (2d Cir.1991) (observing that § 1326 “contains no language requiring proof of a particular mental state”). The challenge is only enhanced by the fact that § 1326 does not codify a common law crime, where the law presumes a scienter requirement even where not expressly stated. See Morissette v. United States, 342 U.S. 246, 250-52, 72 S.Ct. 240, 96 L.Ed. 288 (1952); accord Liparota v. United States, 471 U.S. 419, 424-25, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Nevertheless, in construing statutes, courts assume that Congress intends to legislate consistently with the Constitution. The Due Process Clause admits only a narrow category of strict liability crimes, generally limited to regulatory measures where penalties are relatively small. See Morissette v. United States, 342 U.S. at 258-60, 72 S.Ct. 240. Section 1326(b)(2), however, admits the possibility of a 20-year sentence. In such circumstances, we can properly presume that § 1326 requires at least some proof of mens rea to support conviction. See generally Conn. Bar Ass’n v. United States, 620 F.3d 81, 102 (2d Cir. 2010) (concluding that “absent clear indication in the language or legislative history of a contrary congressional purpose, mens rea is presumed to be an element of any federal crime”).
Certainly, that is the conclusion this court has reached in considering the statute’s “enter” and “attempt to enter” prohibitions. While we have declined to construe these prohibitions to require proof of a defendant’s specific intent to disobey the law, see United States v. Newton, 677 F.2d 16, 17 (2d Cir.1982); accord United States v. Rodriguez, 416 F.3d 123, 128 (2d Cir. 2005) (holding that conviction for attempted illegal reentry does not require proof that defendant knew he needed Attorney General’s permission to enter United States); see also Sand at Instr. 33A-36, cmt. at 63-64 (observing that “every circuit to address the question has held that the government need not prove that the defendant knew it was illegal for him to enter the United States” to support § 1326 conviction), we have held that the government must prove general intent, as evidenced by “a voluntary act of reentry or attempted reentry by the defendant that is not expressly sanctioned by the Attorney General.” United States v. Martus, 138 F.3d 95, 97 (2d Cir.1998); accord United States v. Champegnie, 925 F.2d at 55 (holding intent to reenter United States sufficient mens rea for attempted reentry despite common law’s history of requiring specific intent for attempt crimes); see Sand at Instr. 33A-36, cmt. at 63 (explaining why “section 1326 is better viewed as a general intent crime requiring only that the defendant voluntarily enter the United States”).
There is no reason to construe § 1326’s “found in” prohibition not to require similar proof of mens rea. Even though being *106 “found in” a place might be viewed as a “passive act” by the defendant, see United States v. Salazar-Robles, 207 F.3d 648, 650 (9th Cir.2000), criminal culpability demands proof that the defendant was voluntarily in the United States either at the time he was found here or at some time after his last return to the United States before he was so found.
Voluntary presence at the time officials find a deported alien in this country does not require the government to prove how the defendant entered the United States. See Sand at Instr. 33A-36, cmt. at 62-63 & n. 7 (citing cases). At the same time, courts have held that § 1326 does not require proof of voluntary presence at the precise moment a defendant is found in the United States. In United States v. Salazar-Robles, 207 F.3d 648, the illegal alien was in state prison when federal authorities discovered that he was in this country. The Ninth Circuit recognized that “[a]s Salazar-Robles did not voluntarily put himself in Folsom State Prison, he did not voluntarily commit the act” of being found in the United States. Id. at 650. Nevertheless, that court upheld defendant’s conviction, holding that the crime’s mens rea element could be satisfied by proof that defendant was found in the United States (albeit in prison) as a result of his voluntary return to this country after deportation. See id.
In this respect, being “found in” the United States may be considered a continuing offense that begins with the alien’s voluntary return to this country after deportation and is completed when federal authorities discover his presence. See United States v. Hernandez-Noriega, 544 F.3d 1141, 1143 (10th Cir.2008) (holding that “ ‘[a]lthough the act of returning to the United States must be voluntary, it is not relevant whether an alien’s continued presence in the United States was voluntary at the moment of discovery’ ” (quoting United States v. Dixon, 327 F.3d 257, 259 (3d Cir.2003))). But I do not think the same continuing offense conclusion can apply where a defendant does not maintain a continuous physical presence in the United States between his voluntary return following deportation and authorities’ discovery of his presence. An intervening departure from the United States effectively breaks the continuum that allows the defendant’s discovery in the country at one point to be attributed to his voluntary return at an earlier time, so as to satisfy both the actus reus and mens rea elements of the “found in” crime. Thus, where a defendant is found in the United States only after an intervening physical departure, that discovery cannot be said to derive from the pre-departure return. Rather, to support a § 1326 “found in” conviction, the government must prove that the alien was voluntarily in the United States at some point between his most recent return to this country and his discovery by U.S. authorities.
That is not this case. There is no question that Canadian authorities returned Vasquez to this country in handcuffs, and that he remained so until he was surrendered to the U.S. authorities. Cf. United States v. Quintana-Torres, 235 F.3d 1197, 1200 (9th Cir.2000) (observing that mens rea requirement for “found in” conviction would not be satisfied where defendant was “extradited [to United States] against his will”). United States v. Ambriz-Ambriz, 586 F.3d 719 (9th Cir.2009), on which the government relies to argue that an alien denied entry into a foreign country never departs the United States, is distinguishable in that the alien there was allowed to return to the United States in his own car, whereupon he specifically — and falsely — identified himself to United States Customs officers as a United States citizen and produced a California driver’s license. *107 See id. at 720. Such conduct suggests that, having failed to achieve his first objective, to enter Canada, Ambriz’s intent was to gain entry to the United States.[3] Nothing in this case manifests that Vasquez had a similar intent to return to the United States after being denied entry into Canada. I recognize that the Ninth Circuit’s decision in Ambriz-Ambriz does not depend on the circumstances I have highlighted. Nevertheless, these circumstances dissuade me from concluding, as the government urges, that, in the case of an alien who physically departs the United States but is denied entry to a foreign country, the mens rea element of § 1326 can be established based on the alien’s voluntary entry into the United States pri- or to his physical departure.[4]
In Ambriz-Ambriz, the Ninth Circuit candidly acknowledged that its decision was animated by a concern that if the defendant in that case could not be prosecuted for being “found in” the United States on his return from Canada, he would escape prosecution altogether.
Because Ambriz presumably did not have any intent to enter the United States, as he never legally left the country ..., it is doubtful that Ambriz could be successfully prosecuted ... for “entering” or “attempting to enter” the United States. Thus, if the court were to adopt Ambriz’s argument that he cannot be prosecuted for being “found in” the United States, this could lead to the untenable result that the government could not prosecute Ambriz under any of the provisions of [§ 1326].
686 F.3d at 723 n. 3. Insofar as this case also presents us with a defendant who avoids prosecution despite years of unlawful presence in the United States, I share the Ambriz-Ambriz panel’s general concern. But at the same time the Ninth *108 Circuit recognized the mens rea problem raised in prosecuting Ambriz for entering or attempting to enter the United States, it failed to acknowledge, I respectfully submit, the mens rea problem raised in prosecuting a defendant for being “found in” this country following his voluntary and actual physical departure from the United States and his involuntary return.
The government would have us solve this mens rea problem by adopting the legal fiction that a person who is no longer physically in this country, in fact, remains here so as to commit a continuing crime in violation of § 1326. I decline to do so. To be sure, in protecting its borders, a country may well make decisions about who has or has not lawfully entered its territory in ways that do not comport with actual physical presence. But such matters are best left to the legislature, particularly when they implicate criminal culpability, where a court’s task is not to fill gaps in the law but to ensure its provision of adequate notice of the conduct proscribed. See generally Arriaga v. Mukasey, 521 F.3d 219, 224 (2d Cir.2008) (“No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.” (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939))).
In sum, while reversal is an unsatisfactory outcome in this case for a defendant who lived unlawfully in this country for approximately a decade, I join my colleagues in the majority in concluding that Vasquez’s conviction for being “found in” the United States unlawfully cannot stand because
(1)the crime has an implicit mens rea element requiring proof of voluntary presence in the United States as well as an explicit actus reus element of being found in the United States;
(2) that requisite mens rea can be established either by proof of (a) lack of official restraint at the time defendant is found in the United States, or (b) evidence of defendant’s voluntary presence in the country at or after his most recent return to the United States, and
(3) as a matter of law, the mens rea element was not proved in this case because
(a) Vasquez was under official restraint when he returned to the United States from Canada,
(b) no record evidence was adduced indicating that, upon being denied entry into Canada, Vasquez’s intent was to return to the United States, and
(c) Vasquez’s voluntary return to the United States after deportation almost a decade before he was found in this country could not supply the requisite mens rea because he had physically departed this country and was returned only in restraint.

. The official restraint doctrine has been held irrelevant to other criminal immigration laws. See United States v. Munoz, 412 F.3d 1043, 1049 (9th Cir.2005) (holding that alien smuggled to United States "comes to” the United States under 8 U.S.C. § 1324(a)(2)(B) when he crosses the border regardless whether under official restraint).

. "Free from official restraint” has been defined to mean "free from observation or surveillance by government officials for any period of time after one enters the United States until the time one is apprehended or placed in custody.” Sand at Instr. 33A-36. See Correa v. Thornburgh, 901 F.2d at 1172.

. Insofar as the mens rea requirement of voluntariness suggests the availability of a duress defense to a § 1326 charge, the burden would be on the defendant “to establish all elements of the defense, including the fact that the defendant surrendered to authorities at the first safe opportunity to do so.” Sand at Instr. 33A-36, cmt. at 64. See United States v. Charleus, 871 F.2d 265, 270 (2d Cir.1989). Cf. Dixon v. United States, 548 U.S. 1, 6-7, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (stating that existence of duress normally does not negate defendant’s criminal state of mind when applicable offense requires defendant to have acted knowingly or willfully).

. Indeed, neither Ambriz-Ambriz, nor the same court’s decision in United States v. Gonzalez-Diaz, 630 F.3d 1239 (9th Cir.2011), discusses the voluntariness requirement of a § 1326 "found in” violation. In concluding that an alien who physically departed the United States and was held in custody overnight in Canada "neither departed the United States nor entered Canada” but remained always " ‘in’ the United States” through the time "he was ‘found’ by U.S. immigration authorities,” Gonzalez-Diaz recognized "two sound general propositions” that supported defendant’s arguments to the contrary. Id. at 1242-44. First, "an alien cannot be found in the United States if he has departed the United States before he is found.... [I]f an alien departs before his unlawful presence is discovered, the offense has not been committed.” Id. at 1243 (emphasis in original). Second, “when an alien is entering the United States from a foreign country and is discovered at the border, he cannot be found in the United States until he is free from official restraint.... 'Rather, the government must also establish that the alien entered the United States free from official restraint at the time officials discovered or apprehended him.’ ” Id. (quoting United States v. Ruiz-Lopez, 234 F.3d 445, 448 (9th Cir.2000)). Nevertheless, the court concluded that Ambriz-Ambriz "dictated” the conclusion that Gonzales-Diaz had neither departed the United States nor entered Canada "in the sense contemplated” by the authorities supporting the two cited propositions. Id. Because we are not bound by Ambriz-Ambriz, which is in any event distinguishable from this case for reasons discussed in the text of the opinion, I do not reach a similar conclusion here.